## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONELL WILLIAMS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-114** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **JOHN WETZEL,** *et al.*, | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This matter is before the Court pursuant to Defendant Mayer ("Mayer")'s motion to dismiss (Doc. No. 31) and amended motion to dismiss and/or for summary judgment (Doc. No. 37), as well as Defendant Pepper ("Pepper")'s motion for summary judgment (Doc. No. 34).

## I.     BACKGROUND

On January 21, 2021, *pro se* Plaintiff Ronell Williams ("Plaintiff"), who is currently incarcerated at the State Correctional Institution Fayette in LaBelle, Pennsylvania ("SCI Fayette"), initiated the above-captioned case by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants John Wetzel ("Wetzel"); C.O. John Doe 1; Superintendent Laurel Harry ("Harry"); John Doe 2, a dentist at SCI Camp Hill; Superintendent Mark Capozza ("Capozza"), and John Doe 3, a dentist at SCI Fayette.  (Doc. No. 1.)  Plaintiff alleges that on December 18, 2019, he was transported from SCI Greene to SCI Camp Hill; Defendant John Doe 1 "was on duty as a transporter" during this time.  (Doc. No. 1 ¶ 11.)  Once Plaintiff arrived

at SCI Camp Hill, he was escorted into a holding cell, where all inmates were ordered to strip and face the wall.  (*Id.* ¶¶ 13-14.)  Plaintiff avers that Defendant John Doe 1 "approached [him] from behind, grabbed [his] head[,] then banged [his] face against a wall, knocking out [his] front, left tooth in the process."  (*Id.* ¶ 15.)  Plaintiff was bleeding from the mouth and requested medical care.  (*Id.* ¶ 16.)  Defendant John Doe 1 denied him care and ordered him to give him the tooth.  (*Id.*)  Plaintiff complied and Defendant John Doe 1 left with the tooth.  (*Id.*)  Plaintiff "filed a medical request slip to receive medical care days later."  (*Id.* ¶ 17.)

Plaintiff reported the assault to Defendant John Doe 2, and Defendant John Doe 2 "informed Plaintiff his medical needs would get resolved at the next prison." (*Id.* ¶ 18.)  Plaintiff avers that Defendant John Doe 2 failed to provide antibiotics, pain relief, and a replacement tooth.  (*Id.*)  Security staff at SCI Camp Hill interviewed Plaintiff; soon after that, Plaintiff was transferred to SCI Fayette "with his medical issue unresolved."  (*Id.* ¶ 19.)  Plaintiff avers that Defendant John Doe 3 also failed to provide antibiotics, pain relief, and a replacement tooth.  (*Id.* ¶ 20.) He maintains that "[o]nly after learning of Plaintiff's intention to file this complaint did Defendant Doe #3 beg[i]n the process of issuing a replacement tooth."  (*Id.* ¶ 21.)  Based on the foregoing, Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights.  (*Id.* ¶¶ 22-37.)  He seeks damages as well as declaratory and injunctive relief.  (*Id.* ¶¶ 39-48.)

2

In a Memorandum and Order dated January 28, 2021, the Court granted Plaintiff leave to proceed *in forma pauperis* and screened his complaint pursuant to the Prison Litigation Reform Act ("PLRA").  (Doc. Nos. 7, 8.)  Specifically, the Court dismissed without prejudice Plaintiff's claims against Defendants Wetzel and Harry, as well as his Fourteenth Amendment claims against Defendants John Does 1 and 2.  (Doc. No. 8.)  The Court granted Plaintiff leave to file an amended complaint with respect to these claims within thirty (30) days.  (*Id.*)  The Court also transferred Plaintiff's claims against Defendant Capozza and John Doe 3 to the United States District Court for the Western District of Pennsylvania for further proceedings.  (*Id.*)  The Court advised Plaintiff that if he did not file an amended complaint, the above-captioned action would proceed as to his Eighth Amendment claims against Defendants John Does 1 and 2.

Plaintiff did not file an amended complaint.  Accordingly, in an Order dated March 10, 2021, the Court directed Plaintiff to either provide names for Defendants John Does 1 and 2 or submit a proposed Rule 45 subpoena, limited to discovering the identities of Defendants John Does 1 and 2.  (Doc. No. 9.)  After receiving an extension of time to do so (Doc. Nos. 10, 11), Plaintiff filed a motion for discovery order on April 5, 2021 (Doc. No. 12).  In an Order dated April 8, 2021, the Court granted Plaintiff's motion, directed the Clerk of Court to issue a blank but signed subpoena form to Plaintiff, and directed Plaintiff to complete and return the

3

subpoena to the Clerk's office within thirty (30) days.  (Doc. No. 14.)  Plaintiff returned the subpoena on April 29, 2021, and it was forwarded to the United States Marshals Service for service.

Prior to service of the subpoenas, Plaintiff submitted identifying information for Defendants John Does 1 and 2.  (Doc. No. 17.)  He identified John Doe 1 as Corrections Officer Mayer and John Doe 2 as dentist Larry Pepper.  (*Id.*)  In an Order dated June 28, 2021, the Court directed the Clerk of Court to substitute these individuals for John Does 1 and 2 and directed service of the complaint upon them. (Doc. No. 18.)  After Defendants Mayer and Pepper appeared, the Court directed them to file their answers or other responses to Plaintiff's complaint on or before August 30, 2021.  (Doc. No. 28.)  Defendant Pepper moved for and was granted an extension of time, until September 26, 2021, to file his response.  (Doc. Nos. 29, 30

Defendant Mayer filed a motion to dismiss (Doc. No. 31) on August 27, 2021. He filed his brief in support on September 10, 2021.  (Doc. No. 32.)  Defendant Mayer asserts that dismissal is appropriate because Plaintiff failed to exhaust his administrative remedies.  (*Id.*)  In an Order entered September 13, 2021, the Court informed the parties that, pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), it would consider the exhaustion issue in the context of summary judgment, and by doing so, would consider matters outside the pleadings in its role as factfinder.  (Doc. No. 33.)  The Court directed Defendant Mayer to file a statement

of material facts within fourteen (14) days and directed Plaintiff to respond to the motion within thirty (30) days of the date on which Defendant Mayer filed his statement of material facts. (*Id.*) Defendant Mayer subsequently filed an amended motion to dismiss and/or for summary judgment and a statement of facts. (Doc. Nos. 37, 38.)

On September 23, 2021, Defendant Pepper filed a motion for summary judgment in which he also raises the issue of administrative exhaustion. (Doc. No. 34.) The Court gave notice to the parties, pursuant to *Paladino*, in an Order dated September 23, 2021, and directed Plaintiff to respond to Defendant Pepper's motion within thirty (30) days. (Doc. No. 35.) Plaintiff, however, has not filed responses to Defendants Mayer and Pepper's motions, and has not sought an extension of time to do so.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*,

pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters

of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).   A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

**B.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party

seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material

facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (noting that *pro se* parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants").

### C.   Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  *See* 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).  To state a cause of action

under Section 1983, a plaintiff must allege that: (1) the conduct complained of was

committed by persons acting under color of state law; and (2) the conduct violated a

right, privilege, or immunity secured by the Constitution or laws of the United States.

*See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting

*West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.   STATEMENT OF MATERIAL FACTS[1]

Plaintiff is currently incarcerated at SCI Fayette and was housed at SCI Camp

Hill from December 18, 2019 until March 5, 2020.  (Doc. Nos. 34-2 ¶¶ 2-3; 38 ¶¶ 2-

3.)  Defendant Pepper "is an oral and maxillofacial surgeon who provides treatment

in this specialty as an outside consultant to inmates of several prison facilities within

the Pennsylvania Department of Corrections."  (Doc. No. 34-2 ¶ 4.)  All inmates

---

[1] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  *See* M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements.  *See id.*  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  *See id.*  Unless otherwise noted, the background herein is derived from the Rule 56.1 statements of facts filed by Defendants Mayer and Pepper. (Doc. Nos. 34-2, 38.)  Plaintiff has not filed responsive statements' to Defendants' Rule 56.1 statements of facts.  Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed.  *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; *United States v. Alberto*, No. 3:18-cv-1014, 2020 WL 730316, at \*2 (M.D. Pa. Feb. 13, 2020) (concluding that the "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

11

seen by Defendant Pepper "are referred to him by other prison medical or dental staff members." (*Id.* ¶ 5.)  During the time that Plaintiff was at SCI Camp Hill, Defendant Pepper was there to treat patients on January 7, 2020, January 21, 2020, February 4, 2020, and February 18, 2020. (*Id.* ¶ 6.)  Defendant Pepper's review of medical records indicates that he never saw or treated Plaintiff "on these or any other dates." (*Id.*)

The Pennsylvania Department of Corrections' inmate grievance system is set forth in DC-ADM 804.  (Doc. Nos. 34-2 ¶ 8; 38 ¶ 4.)  This policy provides "the means for an inmate to file a written grievance for redress of complaints." (*Id.*)  If an inmate is not satisfied with the response, he may appeal to the facility manager or Superintendent. (*Id.*)  "If this first level appeal is not satisfactory, the final appeal is to the Chief of the Secretary's Office of Inmate Grievances and Appeals [("SOIGA")]." (*Id.*)  "An inmate must complete this process through the final appeal to the SOIGA as a prerequisite of filing a federal suit." (*Id.*)  Once SOIGA has considered the grievance on its merits, 'the administrative remedy has been exhausted as to that grievance, regardless of the results of its review." (*Id.*)  "All inmates are provided with a summary of the DC-ADM 804." (Doc. Nos. 34-2 ¶ 9; 38 ¶ 5.)

"The back up to the Facility Grievance Coordinator at SCI Camp Hill searched the Automated Inmate Grievance Tracking System for all grievances in conjunction

with he within litigation." (Doc. Nos. 34-2 ¶ 10; 38 ¶ 6.) That search revealed that during his time at SCI Camp Hill, Plaintiff filed two (2) grievances, "one regarding his inmate account and the other regarding clothing issues." (Doc. Nos. 34-2 ¶ 11; 38 ¶ 7.) Plaintiff did not file any grievances related to any "alleged encounter with Defendant Mayer or any problem with staff." (Doc. No. 38 ¶ 8.) Moreover, Plaintiff did not file any grievances regarding a "treatment visit with [Defendant] Pepper during the time he was housed at SCI Camp Hill or since that time." (Doc. No. 34-2 ¶ 12.) Defendant Pepper was never notified of any grievances, and he was never served with a copy of any grievances. (*Id.* ¶ 7.)

## IV.   DISCUSSION

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007);

*see also Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. *See Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. *See id.* Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. *See, e.g., Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this

exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *See Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," *see Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *See Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *See Harris*, 149 F. App'x at 59. Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *See Warman*, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. *See Casey v. Smith*, 71 F. App'x 916

(3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. *See Ross v. Blake*, 578 U.S. 632 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *See id.* at 643. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *See id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *See id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." *See id.* at 644. However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by
> prison staff, an inmate must show (1) that the misrepresentation is one

16

which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

*Hardy v. Shaikh*, 959 F.3d 578, 588 (3d Cir. 2020).

Defendants Mayer and Pepper maintain that they are entitled to summary judgment because Plaintiff did not file a single grievance related to his allegations against them. (Doc. Nos. 32 at 6-7; 36 at 10-11.) In support, Defendants have provided a declaration from Deborah L. Alvord, the Superintendent's Assistant at SCI Camp Hill. (Doc. No. 32-1.) One of Ms. Alvord's responsibilities is to serve as the back up to the Facility Grievance Coordinator at SCI Camp Hill. (*Id.* at 2.) According to her review of the Automated Inmate Grievance Tracking System, Plaintiff filed two (2) grievances during his time at SCI Camp Hill. (*Id.* at 4.) "One of the grievances was in regard to his account and the other concerned basic clothing issues." (*Id.*) Thus, the record before the Court establishes that Plaintiff never filed a grievance regarding the claims he raises against Defendants Mayer and Pepper. Plaintiff has not responded to Defendants' motions and, therefore, has not refuted the defense that he failed to properly exhaust the claims before the Court. The PLRA requires full and proper exhaustion prior to the initiation of Plaintiff's claims in federal court, and this Court cannot excuse compliance with those requirements. Moreover, Plaintiff has not presented any evidence to suggest that the administrative remedy procedure was rendered unavailable to him. The Court, therefore, will grant

Defendants Mayer and Pepper's motions on the basis that Plaintiff failed to properly exhaust his administrative remedies.

## V.   CONCLUSION

For the foregoing reasons, Defendant Mayer's motion to dismiss (Doc. No. 31) and amended motion to dismiss and/or for summary judgment (Doc. No. 37), as well as Defendant Pepper's motion for summary judgment (Doc. No. 34), will be granted.  An appropriate Order follows.


<u>s/ Sylvia H. Rambo</u>
United States District Judge

Dated: November 3, 2021